**RECORD NUMBERS: 16-2261**

# United States Court of Appeals
## *for the*
# Fourth Circuit

**BLACK WATER MANAGEMENT, LLC,**

*Plaintiff/Appellant*,

– v. –

**MARK D. SPRENKLE, COLIN HEALY, KEVIN HEALY, TBT NETWORK LLC d/b/a Tim Be Told, TIMOTHY OUYANG, LUAN NGUYEN, JACOB JAMES "JIM" CARISMA BARREDO, ANDREW DANIEL CHAE, and STEVE VORLOP,**

*Defendant/Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

# REPLY BRIEF OF APPELLANT

**JOSEPH R. POPE**
 (*Counsel of Record*)
**WILLIAMS MULLEN**
**A PROFESSIONAL CORPORATION**
**200 South 10th Street (23219)**
**P.O. Box 1320**
**Richmond, VA 23218**
**(804) 420-6000**
*Counsel for Appellant*
**Black Water Management, LLC**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................... ii

Argument .................................................................................................................... 1

        A.     Sprenkle's Membership In BWM Was Conditioned On His Initial Contribution ................................................................................................. 1

        B.     The Record Does Not Support Appellees' Claim That Sprenkle Made Capital Contributions To The Company .......................................... 4

                1.    Sprenkle did not contribute an artist management contract with Jesse Harper to BWM LLC .......................................................... 5

                2.    Sprenkle did not contribute an artist management contract with Colin Healy and the Jetskis to BWM LLC ................................ 8

                3.    Sprenkle made no tangible contribution of intellectual property ....................................................................................... 9

        C.     Even Assuming That Sprenkle Was A Member Of BWM LLC At Some Point, By Failing To Make A Capital Contribution He Lost Any Interest In The Company ..................................................................... 10

        D.     Because The Jurisdictional Facts Are Intertwined With The Merits Of BWM LLC's Claim For Declaratory Judgment, The Court Should Assume Jurisdiction Exists ............................................................ 13

Conclusion ................................................................................................................ 14

Request for Oral Argument .................................................................................... 14

Certificate of Compliance ....................................................................................... 15

Certificate of Service

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982) ................................................................................ 13

*Allen v. Aetna Cas. & Sur. Co.*,
  222 Va. 361 (1981) .................................................................................................. 5

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*,
  235 F. Supp. 2d 485 (E.D. Va. 2002) ...................................................................... 6

*Bell v. Hood*,
  327 U.S. 678 (1946) ............................................................................................... 13

*Edmunds v. City of Newport News*,
  46 Va. Cir. 548, 1997 WL 33575572 (Newport News Jan. 8, 1997) ..................... 1

*Epperson v. Epperson*,
  108 Va. 471 (1908) .................................................................................................. 7

*Fransmart, LLC v. Freshii Dev., LLC*,
  768 F. Supp. 2d 851 (E.D. Va. 2011) ...................................................................... 7

*In re Frye*,
  216 B.R. 166 (Bankr. E.D. Va. 1997) ..................................................................... 7

*In re Shaver*,
  2014 WL 3849687 (Bkrtcy. W.D. Va. 2014) .......................................................... 3

*J. Maury Dove Co. v. New River Coal Co.*,
  150 Va. 796 (1928) .................................................................................................. 7

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ................................................................................ 13

*Levine v. 418 Meadow Associates, LLC*,
  2014 WL 2853950 (Sup. Ct. Conn. May 16, 2014) .............................................. 12

*McGuire v. Brown*,
   114 Va. 235 (1912) .................................................................................................. 7

*Persinger & Co. v. Larrowe*,
   252 Va. 404 (1996) .................................................................................................. 5

*Plyler v. Moore*,
   129 F.3d 728 (4th Cir. 1997) ................................................................................... 2

*Reynolds & Reynolds Co. v. Hardee*,
   932 F. Supp. 149 (E.D. Va. 1996) .......................................................................... 7

*Richmond Postal Credit Union v. Booker*,
   170 Va. 129 (1938) .................................................................................................. 2

*Snyder–Falkinham v. Stockburger*,
   249 Va. 376 (1995) .................................................................................................. 6

*Sonoma Dev., Inc. v. Miller*,
   258 Va. 163 (1999) .................................................................................................. 3

*Va. Hous. Dev. Auth. v. Fox Run Ltd. P'shp*,
   255 Va. 356 (1998) .............................................................................................. 2, 3

*W.J. Schafer Assocs., Inc. v. Cordant, Inc.*,
   254 Va. 514 (1997) .................................................................................................. 5

## Rules and Statutes

28 U.S.C. § 2201 ............................................................................................................ 13

28 U.S.C. § 2202 ............................................................................................................ 13

Va. Code § 13.1-1040.1 ................................................................................................. 13

Va. Sup. Ct. R. 12(b)(1) ................................................................................................. 13

## Other Authorities

*Black's Law Dictionary* 1496 (6th ed. 1990) ............................................................... 3

iii

# ARGUMENT

### A. Sprenkle's Membership In BWM Was Conditioned On His Initial Contribution.

The Appellees tacitly acknowledge that—contrary to his claims at the time—Sprenkle did not possess rights to assign artist management contracts with Jesse Harper and Colin Healy and the Jetskis (the "Artist Contracts") when he signed the Operating Agreement. Because Sprenkle did not possess any interest in the Artist Contracts, he was unable to assign them to the Company and provide his required initial capital contribution. *See Edmunds v. City of Newport News*, 46 Va. Cir. 548, 1997 WL 33575572, at *1 (Newport News Jan. 8, 1997) (defining a legal assignment as "a transfer of a present right which divests the assignor of all control over that which is assigned"). Arguing that the Operating Agreement did not require Sprenkle to make an initial contribution of the Artist Contracts as consideration for his membership interest, the Appellees contend that Sprenkle became a member of BWM when the Company was formed. (Appellees' Br. at 15.) The Appellees, however, ignore the Assignment Agreement that was executed with the Operating Agreement as part of the same transaction.

> The Assignment Agreement provides as follows:
>
> Mark Sprenkle hereby agrees to assign and assigns to the Company his entire interest in the management agreements, whether written or oral, between himself and Jesse Harper and himself and Colin Healy and the Jetskis and each individual member of Colin Healy and the Jetskis . . . . *Such assignments are in consideration for the membership interests in the Company as outlined in 'Exhibit A' of the Company's Operating Agreement.*

1

(JA. 183 (emphasis added).) And Exhibit A of the Company's Operating Agreement indicated that Sprenkle would obtain a 50% interest in the Company for his contribution of the Artist Contracts. (JA.182.) Accordingly, Sprenkle's interest in BWM LLC was conditioned on his initial assignment of the Artist Contracts. Because Sprenkle never possessed the Artist Contracts, it was impossible for him to provide the necessary consideration for his interest in BWM LLC. Thus, Sprenkle never became a member of the Company.

The Supreme Court of Virginia has held "that notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract." *Richmond Postal Credit Union v. Booker*, 170 Va. 129, 134 (1938) (citation omitted). The rule further provides that "[s]o long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties." *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'shp*, 255 Va. 356, 365 (1998).[1]

The Operating Agreement and Assignment Agreement were executed as part of the same "transaction" and their terms are not contradictory in any way. Thus, they form a single contract between the parties. The Supreme Court of Virginia has

---

[1] To the extent that the Court considers this an argument raised for the first time in BWM LLC's reply brief, "questions concerning subject matter jurisdiction may be raised at any time by either party or *sua sponte* by this court." *Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997).

defined a "transaction" as "'an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered.'" *Sonoma Dev., Inc. v. Miller*, 258 Va. 163, 168 (1999) (quoting *Black's Law Dictionary* 1496 (6th ed. 1990)). In *Sonoma*, the Court found that a covenant was part of a real estate transaction as it fulfilled a contractual obligation to place a restriction on the property and it was executed in conjunction with the deed to the property. *Id.* at 580. And in *In re Shaver*, the court found that an agreement in which two persons divided their responsibilities for payment of debts and a separate property settlement agreement were part of the same transaction. 2014 WL 3849687, at *3 (Bkrtcy. W.D. Va. 2014). The *Shaver* court noted the documents "deal[t] with the allocation of various marital property and debts, were contemporaneously drafted by the same individual, and were created to divide marital obligations in the course of the divorce . . . ." *Id.*

The Operating Agreement and the Assignment Agreement (1) were executed on the same day by the same people (Mark Sprenkle and Jacob Schur), (2) were drafted to effectuate the creation of BWM LLC and capitalize the Company, and (3) were drafted to effectuate the parties' intention to make Sprenkle's acquisition of an interest in the Company contingent on his initial contribution of the Artist Contracts. The documents also plainly "contemplate the application of terms in the other." *Fox Run Ltd. P'shp*, 255 Va. at 365. The Assignment Agreement expressly references the Operating Agreement, stating the "assignments are in consideration for the

3

membership interests in the Company as outlined in Exhibit A of the Company's Operating Agreement." (JA.183.) And the Assignment Agreement was designed to serve as the vehicle through which Sprenkle was to make his required initial capital contribution to the Company.

In sum, under Virginia law, the Assignment Agreement and the Operating Agreement were part of a single transaction and must be read together as the contract between the parties. And under the Assignment Agreement, Sprenkle's interest in BWM LLC was conditioned on his assignment of the Artist Contracts. Because Sprenkle did not possess the Artist Contracts and could therefore not assign them, he never became a member of BWM LLC. Sprenkle was, accordingly, not a member of BWM LLC when the Company filed its Complaint. The district court accordingly erred in finding that diversity jurisdiction does not exist in this case.[2]

### B. The Record Does Not Support Appellees' Claim That Sprenkle Made Capital Contributions To The Company.

Appellees claim for the first time that even though Sprenkle did not possess an interest in the Artist Contracts at the time he signed the Operating Agreement, he nevertheless maintained an interest in the Company because he made *some* capital contributions to BWM LLC. (Appellees' Br. 16.) This argument flounders for the

---

[2] While Judge Spencer correctly found that the jurisdictional question turned on whether Sprenkle made his required contribution to the Company and the record did not support a finding that Sprenkle had made a capital contribution, Judge Spencer did find that Sprenkle was at one time a member of BWM LLC. (JA.247.) This ruling was incorrect as Sprenkle's membership in the Company was conditioned on his assignment of the Artist Contracts.

4

simple reason that Sprenkle's ownership interest was conditioned on his assignment of the Artist Contracts to the Company through the Assignment Agreement. Because he failed to make this required contribution, he never obtained a membership interest in the Company. Moreover, pursuant to Section 12.9 of the Operating Agreement, members of the Company could "contribute capital only in proportion to their membership interest in the Company." Since, Sprenkle never obtained any membership interest in BWM LLC, he had absolutely no right to contribute any capital. Furthermore, the record does not support Sprenkle's claim that, even if he could later make a capital contribution, he made any capital contribution to the Company.

      **1.    Sprenkle did not contribute an artist management contract with Jesse Harper to BWM LLC.**

Virginia law is explicit that a contractual relationship requires "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981); *see also Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and therefore, no contract.") (citation omitted). Mere "agreements to agree in the future" are "too vague and too indefinite to be enforced." *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997); *see also Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp.

5

2d 485, 490 (E.D. Va. 2002) ("It is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable.").

Harper stated in a sworn affidavit that "Sprenkle and I were involved in a relationship that was non-contractual. Indeed, Sprenkle and I have never had an oral or a written agreement regarding my career." (JA.185.) Refusing to accept this, the Appellees assert that Sprenkle contributed some undefined interest in Harper to the Company. But even their own quote from a deposition taken of Harper shows that Sprenkle had absolutely no transferable interest in Harper's music career. Specifically, in the deposition, Harper testified:

> So with regard to [whether] or not [Sprenkle] had rights, I don't know if there are specific, you know percentages that you can put on that . . . [b]ut I – it would be reasonable to say in my mind that had he gotten me a deal, yes, he was entitled to a portion of it.

(Appellees' Br. 18 (citing ECF Doc. No. 18-3).)

The Appellees' suggestion that Harper's abstruse and equivocal testimony provides evidence that there was a contract of any sort between he and Sprenkle is fanciful. At best, Sprenkle and Harper had an "understanding" that if some ill-defined condition occurred (Harper received some benefit), the parties would negotiate a contract that would specify some payment in exchange for Sprenkle's unspecified past performance. That is not an enforceable contract under Virginia law. A contract requires a meeting of the minds. *Snyder–Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). A "meeting of the minds" occurs only where the parties "have a clear

6

understanding of [the] terms of agreement and [a shared] intention to be bound thereby . . . ." *In re Frye*, 216 B.R. 166, 172 (Bankr. E.D. Va. 1997) (quotation marks and citation omitted). Sprenkle had no interest in an enforceable artist management contract with Harper and any suggestion that he did is, frankly, fiction.

Moreover, even assuming Sprenkle possessed an enforceable contract with Harper, Sprenkle has never claimed that he had a right to assign the contract to BWM LLC. "In Virginia, the general rule is that contracts are freely assignable unless the assignment is prohibited by the terms of the agreement, is barred by public policy, or involves personal services." *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 859–60 (E.D. Va. 2011) (citing *J. Maury Dove Co. v. New River Coal Co.*, 150 Va. 796, 826 (1928)). An artist management agreement is a personal services contract, as it is based in a relationship of trust and confidence, and requires the manager to exercise skill, judgment, and expertise in advancing the artist's career. *See McGuire v. Brown*, 114 Va. 235, 239–42 (1912); *Epperson v. Epperson*, 108 Va. 471, 475–77 (1908) (stating that "an executory contract for personal service, founded on personal trust or confidence, is not assignable"). A personal services agreement is unassignable absent the express consent of all parties to the contract. *See Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149, 153 (E.D. Va. 1996) ("Under Virginia law, contracts for personal services are not assignable, unless both parties agree to the assignment.*"); J. Maury Dove Co., Inc. v. New River Coal Co.*, 150 Va. 796, 827 (1928) (finding where "contract contains mutual obligations and liabilities, or involve[s] a relation of personal confidence," one party

7

cannot assign it without consent of other party). The record does not contain a shred of evidence that Harper consented to the assignment of any contractual relationship to BWM LLC. Sprenkle therefore could not and did not assign to BWM LLC any contract he allegedly had with Harper.

### 2. Sprenkle did not contribute an artist management contract with Colin Healy and the Jetskis to BWM LLC.

The Appellees next claim that Sprenkle contributed an artist management contract with Colin Healy and the Jetskis to BWM LLC. But in a deposition from 2015 Colin Healy testified unequivocally that there was no contract, written or oral, between Sprenkle and the Jetskis before the date of BWM's formation. Healy testified that the only artist management contract that Colin Healy and the Jetskis ever signed was a contract between the band and BWM LLC. (JA.191 ("Q: Prior to signing this contract with [BWM] (dated December 31, 2008), were you under any other contract with Mark Sprenkle . . . before you signed this written contract [with BWM]?; A: No.").) Sprenkle cannot claim that a contract executed directly by BWM LLC and Colin Healy and the Jetskis constitutes a personal capital contribution that he made to the Company. The same reasoning applies to Sprenkle's claim that the artist management contract between TBT and BWM LLC qualifies as Sprenkle's capital contribution to the Company.

The Appellees also suggest that Sprenkle made a capital contribution to the Company by assigning to it debts Colin Healy and the Jetskis purportedly owed.

8

(Appellees' Br. 17.) The existence of this debt is yet another fiction. There is absolutely nothing in the record to substantiate the existence of any debt that was owed by Colin Healy and the Jetskis to Sprenkle. In fact, Healy testified that he was unaware that the band had any obligation to pay Sprenkle anything at all. (JA.193, 195.) And the letter that Appellees claim shows that Healy attempted to compromise a debt with BWM LLC was a document actually written by Sprenkle. Amazingly, in the letter Sprenkle posed as Healy and addressed the letter to himself, Schur, and BWM LLC. In the letter, Sprenkle sought Healy's official release from the contract with BWM LLC in exchange for a promise to repay debts. (JA.192.) But Healy and Sprenkle both knew the debt did not exist, and Sprenkle in his purported capacity as a member of BWM LLC did not intend to allow the Company to collect. (*See* JA.22–23.)

Simply put, Sprenkle never satisfied his agreed upon required initial capital contribution, and Appellees cannot unilaterally amend the Operating Agreement and Assignment Agreement to substitute some other form of consideration in place of the capital contribution to which the parties' agreed.

### 3. Sprenkle made no tangible contribution of intellectual property.

Grasping for anything to qualify as a capital contribution, the Appellees claim that Sprenkle made a contribution of intellectual property to BWM LLC. To substantiate this claim, they point to a single phrase in the Complaint: "[A]ccording to

9

Sprenkle, the company [BWM LLC] had been in existence for over ten years and was a well-recognized name within the recording industry." (JA.12.) But the Appellees fail to direct the Court to other language in the Complaint that makes clear that Sprenkle's representations about the ten-year existence of BWM LLC were false. BWM LLC did not exist at the time in any form—it was a fake entity contrived by Sprenkle to deceive Schur as to Sprenkle's legitimacy as an experienced businessman in the music industry. It is self-evident that a nonexistent company can accrue no valuable goodwill. (JA.11 ("Sprenkle also had not formed a company by the name of 'Black Water Management LLC . . . .'")); (JA.12 (Sprenkle . . . offered Schur an opportunity to 'invest' and obtain an interest in the fictitious Black Water Management LLC).)

Again, the Appellees cannot unilaterally amend the Operating Agreement and Assignment Agreement to circumvent the inescapable fact that Sprenkle did not and cannot satisfy his required initial capital contribution requirement by retroactively changing the consideration that Sprenkle agreed to provide.

> **C.    Even Assuming That Sprenkle Was A Member Of BWM LLC At Some Point, By Failing To Make A Capital Contribution He Lost Any Interest In The Company.**

The Appellees claim that Sprenkle's attestations that he was a member of BWM LLC, that "at all times since becoming a managing member of BWM, LLC [he] maintained a fifty percent ownership interest in the entity, [his] ownership interest has neither been reduced nor terminated, . . .[and] [a]t no point in time did BWM, LLC or any member therein exercise their rights pursuant to Section 12.9 of the Operating

10

Agreement reduce [sic] or terminate [his] membership interest in BWM, LLC," (JA.301–02), establishes conclusively that Sprenkle was at all times a member of BWM LLC, (Appellee Br. 20). This claim, however, ignores that Sprenkle failed to provide the necessary consideration for obtaining his ownership interest by assigning the Artist Contracts to the Company. The argument also ignores that, even assuming Sprenkle ever obtained an ownership interest in the Company, that interest was eliminated by operation of the Operating Agreement.

The Operating Agreement provides as follows:

> 12.9   All Members shall have a right to contribute capital only in proportion to their membership interest in the Company unless the Managing Members unanimously agree to make an exception. A capital contribution by a Member in proportion to his membership interest will ensure that the Member retains his proportion of ownership in the Company. *In the event a Member cannot or chooses not to contribute capital in proportion to his membership interest, his proportional membership interest shall be reduced to reflect the amount of capital he actually contributed.*

(JA. 48 (emphasis added).) This provision means exactly what it says: a member's interest in the Company is defined according to the amount of capital he contributed and a failure to contribute in proportion to one's interest triggers an automatic reduction in the member's interest. The fact is that Sprenkle failed to make any capital contribution to BWM LLC, therefore, his interest in the Company at the time of the Complaint's filing was zero. The Operating Agreement does not require any affirmative act on the part of BWM LLC to reduce a member's interest.

11

This reasoning comports squarely with *Levine v. 418 Meadow Associates, LLC*, 2014 WL 2853950 (Sup. Ct. Conn. May 16, 2014). 2014 WL 2853950 (Sup. Ct. Conn. May 16, 2014). In *Levine*, the operating agreement at issue provided that

> If a member fails to pay when due all or any portion of any Capital Contribution, the Managers shall request the nondefaulting Members to pay the unpaid amount of the defaulting Members to pay the unpaid amount of the defaulting Member's Capital Contribution (the 'Unpaid Contribution'). To the extent the Unpaid Contribution is contributed by any other Member, the defaulting Member's percentage *shall be reduced* and the percentage of each Member who makes up the Unpaid Contribution shall be increased . . . .

*Id.* at *3 n.1. Also at issue was a Connecticut statute entitled "Events of dissociation," which provided that the members of an LLC "may provide in writing in the operating agreement for other events the occurrence of which results in a person ceasing to be a member of the limited liability company." *Id.* at *3 n.2.

Based on the facts before it and the plain language of the operating agreement, the court in *Levine* concluded that because the member failed to make her required capital contribution, her membership interest had been automatically reduced to zero *Id.* at *3. Due to this and the operation of the dissociation statute, the court concluded that the plaintiff was no longer a member of the LLC. *Id.* at *6.

Thus, even assuming Sprenkle ever obtained a membership interest in BWM LLC, because Sprenkle failed to make his required capital contribution to the Company, his interest was reduced to zero by operation of the Operating Agreement

12

and § 13.1-1040.1 of the Code of Virginia  Thus, Sprenkle was not a member of BWM LLC at the time of the Complaint's filing.

> **D.    Because The Jurisdictional Facts Are Intertwined With The Merits Of BWM LLC's Claim For Declaratory Judgment, The Court Should Assume Jurisdiction Exists.**

Courts have uniformly held that in cases where the jurisdictional facts and the facts central to a claim are inextricably intertwined a district court should assume that jurisdiction exists and proceed to determine the merits. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009); *accord Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("[I]n those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[, i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits."). In these cases, a court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946).

In Count I of its Complaint, BWM LLC seeks a declaratory judgment that Sprenkle did not possess the Artist Contracts and because his purported assignment was ineffective he never acquired an ownership interest in BWM LLC. (JA.25.) Specifically, the Complaint alleges: "Plaintiff seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Sprenkle obtained no membership interest in BWM LLC and never obtained any right to benefit therefrom or right to control the same." (*Id.*) The facts central to BWM LLC's declaratory judgment claim are intertwined with the

13

jurisdictional facts, as both turn on the question of whether Sprenkle possessed an ownership interest in the Company. The district court erred by failing to assume jurisdiction and permit BWM LLC's case to go forward.

## CONCLUSION

For the reasons stated herein, the judgment of the district court should be reversed and the matter should be remanded to the district court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

The Appellant respectfully requests oral argument. This case presents complex legal and factual issues, and argument will assist the Court in the decisional process.

Respectfully submitted, this 10th day of March 2017.

                         **BLACK WATER MANAGEMENT LLC**

                         BY:   /s/ Joseph R. Pope
                                Joseph R. Pope
                                WILLIAMS MULLEN
                                A Professional Corporation
                                P.O. Box 1320 (23218)
                                200 S. 10th Street,  16th Floor
                                Richmond, Virginia 23219-1320
                                Telephone:  (804) 420-6560
                                jpope@williamsmullen.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 3,491 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Garamond font.

/s/ Joseph R. Pope

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017 I sent a copy of the foregoing through the Court's CM/ECF system to all counsel filing an appearance in this case.

s/ Joseph R. Pope
WILLIAMS MULLEN
200 S. 10th Street
Richmond, Virginia 23219
